## STATE v. NORTON.

1. Deceased was shot while in an altercation with A, and thereupon B came up and stabbed deceased. In an indictment against A and B for the murder of deceased, there is no objection to a joinder of counts—one charging that A committed the murder with a pistol and that B was present and assisting, and the other that B committed the murder with a knife, and that A was present and assisting.
2. The trial judge having intimated to the jury his opinion that a witness for the prosecution was more reliable than others for the defence, and that the plea of self defence was improbable, a new trial was granted.

3. It was error, under the facts of this case, to charge the jury that there was no room here for a verdict of manslaughter.

4. In stating to the jury that witnesses are examined in the presence of the prisoner in order that he may stop and correct them upon a false statement, the trial judge committed an error which may have prejudiced the prisoner's case before the jury.

Before ALDRICH, J., Orangeburg, September, 1887.

Alexander C. Norton (father) and A. Richard Norton (son) were indicted for the murder of one Hamlin. During an altercation of words between Hamlin and A. R. Norton in a room, Norton fired at Hamlin, the ball taking effect in Hamlin's neck. A. C. Norton then came in while some scuffling was going on, and at once commenced to cut Hamlin with a knife.

So much of the judge's charge as bears upon the matters considered by the court, is stated in the opinion, except his remarks upon the question of conspiracy, which were as follows:

If you conclude, gentlemen, that the prisoners at the bar were acting in concert, that is, that they had conspired together to make an attack upon the deceased, either with a deadly weapon or otherwise, if you know that such a conspiracy existed, you need not inquire at all which wound was the mortal wound. If there was a conspiracy between the father and son to inflict great bodily harm upon the deceased, then there is no necessity for you to consider which wound killed him, because both are principals in that case. A conspiracy may be formed at the very time that the rencounter takes place. But if there is a conspiracy existing previous to the fight, or to the rencounter in which death follows, then both are principals, and no matter who inflicts the mortal wound both are guilty, if the attack was made with malice aforethought. You need not, therefore, inquire into the subject of which wound killed him, provided you are satisfied that the deceased came to his death from wounds inflicted by weapons in the hands of one or both of the conspirators.

Defendants appealed upon the following exceptions, *inter alia:*

I. Because the court erred in refusing the motion of the defendants asking that the solicitor be required to elect upon which of the two counts set forth in the indictment he would proceed.

II. Because the charge of his honor, the presiding judge, was in violation of art. IV., sec. 24, of the Constitution, in that it charged upon the facts.

V. Because his honor erred in charging the jury that the prisoner had a right to "stop a witness and correct him upon a false statement."

XV. Because his honor erred in charging the jury as follows : "I do not see any room here for a verdict of manslaughter."

*Messrs. M. J. Browning, Izlar & Glaze, and L. F. Youmans, for appellants.*

*Mr. Jervey, solicitor, contra.*

June 14, 1888.   The opinion of the court was delivered by

MR. CHIEF JUSTICE SIMPSON.   The defendants, appellants, were convicted of murder in the Court of General Sessions for Orangeburg County, September term, 1887, upon the following indictment, to wit :

"The State of South Carolina, Orangeburg County, in the General Sessions.   At a Court of General Sessions, begun and holden in and for the County of Orangeburg, in the State of South Carolina, at Orangeburg, in the county and State aforesaid, on the third Monday of September, in the year of our Lord one thousand eight hundred and eighty-seven, the jurors of and for the county aforesaid, in the State aforesaid, upon their oath, present that Alexander C. Norton and A. Richard Norton, late of the County of Orangeburg, on the twenty-third day of June, in the year of our Lord one thousand eight hundred and eighty-seven, with force and arms, at McNeill's, in the County of Orangeburg, and State aforesaid, in and upon one J. Lafayette Hamlin, in the peace of God, and of the said State, then and there being, feloniously, wilfully, and of their malice aforethought, did make an assault ; and that the said A. Richard Norton, a certain pistol of the value of one dollar, then and there charged with gunpowder, and one leaden bullet, which said pistol, he, the said A. Richard Norton, in his right hand, then and there had and held. then and there feloniously, wilfully, and of his malice aforethought, did discharge and shoot off, to, at, against, and upon the said J. Lafayette Hamlin ; and that the said A. Richard Norton, with the leaden bullet aforesaid, out of the pistol aforesaid, then and there, by force of the gunpowder aforesaid,

by the said A. Richard Norton discharged and shot off, as afore-
said, then and there feloniously, wilfully, and of his malice afore-
thought, did strike, penetrate, and wound him, the said J. La-
fayette Hamlin, in and upon the right side of the neck of him, the
said J. Lafayette Hamlin, giving unto him, the said J. Lafay-
ette Hamlin, then and there, with the leaden bullet afore-
said, so as aforesaid discharged and shot out of the pistol
aforesaid by the said A. Richard Norton in and upon the right
side of the neck of him, the said J. Lafayette Hamlin, one mor-
tal wound of the depth of five inches, and of the breadth of one-
fourth of an inch, of which mortal wound he, the said J. Lafay-
ette Hamlin, then and there instantly died; and that the said
Alexander C. Norton then and there feloniously, wilfully, and of
his malice aforethought, was present, aiding, abetting, counsel-
ling, advising, and assisting him, the said A. Richard Norton, the
felony and murder aforesaid, in manner and form aforesaid, to do
and commit.     And so the jurors aforesaid, upon their oath afore-
said, do say that the said Alexander C. Norton and the said A.
Richard Norton, him, the said J. Lafayette Hamlin, then and
there, in the manner and by the means aforesaid, feloniously, wil-
fully, and of their malice aforethought, did kill and murder,
against the form of the statute in such case made and provided,
and against the peace and dignity of the same State aforesaid.

And the jurors aforesaid, upon their oath aforesaid, do further
present, that the said Alexander C. Norton and A. Richard Nor-
ton, on the twenty-third day of June, in the year of our Lord
one thousand eight hundred and eighty-seven, with force and arms,
at McNeill's, in the County of Orangeburg, and State aforesaid,
in and upon one J. Lafayette Hamlin, in the peace of God and
of the said State, then and there being, feloniously, wilfully, and
of their malice aforethought, did make an assault, and that the
said Alexander C. Norton, with a certain knife, of the value of
one dollar, which he, the said Alexander C. Norton, in his
right hand, then and there had and held, him, the said J.
Lafayette Hamlin, in and upon the right side of the neck of
him, the said J. Lafayette Hamlin, then and there feloniously,
wilfully, and of his malice aforethought, did strike, penetrate,
and wound, giving unto the said J. Lafayette Hamlin, then and
there, with the knife aforesaid, by the stroke aforesaid, in man-
ner aforesaid, in and upon the right side of the neck of him, the
said J. Lafayette Hamlin, one mortal wound, of the length of
five inches, and of the depth of three inches, of which said mor-
tal wound the said J. Lafayette Hamlin then and there instantly
died; and that the said A. Richard Norton then and there felo-
niously, wilfully, and of his malice aforethought, was present, aid-

ing, abetting, counselling, advising, and assisting the said Alexander C. Norton, the felony and murder aforesaid, in manner and form aforesaid, to do and commit. And so the jurors aforesaid, upon their oath aforesaid, say : That the said Alexander C. Norton and the said A. Richard Norton, him, the said J. Lafayette Hamlin, then and there, in the manner and by the means aforesaid, feloniously, wilfully, and of their malice aforethought, did kill and murder, against the form of the statute in such case made and provided, and against the peace and dignity of the same State aforesaid."

They were sentenced to death, and from this judgment they have appealed upon numerous exceptions. These exceptions, however, have been condensed in the argument of appellants' counsel, mainly, into four allegations of error. And we have considered the case principally with reference to these allegations.

The first is that his honor erred in refusing appellants' motion below "to require the State to elect upon which of the two counts in the indictment it would proceed to trial." We think this exception is untenable. Where the indictment contains two or more counts, charging distinct offences, committed at different times, or by different parties, it would be objectionable, and the trial judge, in the exercise of proper discretion in such case, should require the prosecuting officer to elect one of the charges and confine himself to it, for the reason, as was said by Inglis, J., in the case of *The State* v. *Nelson*, 14 *Rich.*, 172 : "That by the multiplication of distinct charges the prisoner may be confounded in his defence, or prejudiced in his challenges, or the attention of the jury may be distracted." See, also, *Arch. Cr. Pr. & Pl.*, *95. Or, as was said by this court, Mr. Justice McIver speaking for the court, in the case of *The State* v. *Scott*, 15 *S. C.*, 436 : "If, however, distinct felonies are charged in separate counts not growing out of the same transaction, then the proper practice is to require the prosecuting officer to select one of the felonies and confine himself to it, even though no motion to that effect should be made by the accused."

But where the offences charged all grow out of the same transaction, and against the same parties, or where the same offence is charged in different ways, in as many different counts, as may be thought necessary, there is no valid objection to such joinder.

See the case of *State* v. *Scott, supra,* and the cases there cited. See, also, *Archbold's Criminal Practice & Pleadings,* page *96, where he says : "There is no objection to stating the same offence in different ways, in as many different counts of the indictment, as you may think necessary." Mr. Wharton says : "It is suffi- cient here to repeat that counts varying the statement of the mode of death are constantly sustained. And that in an indict- ment charging in one count A as principal, and B as accessory before the fact, and in another count B as principal and A as accessory before the fact, charges but one offence, such counts are not repugnant." *Archbold on Homicide* (2nd ed.), section 857.

In the case before the court, we see but one offence charged, to wit, the murder of the deceased, presented, it is true, in two dis- tinct counts, and charged as having been committed in different ways, but still embracing the same transaction, and against the same parties. We think the indictment is sustained by the authorities cited, as well as by the reasons upon which they are based.

The next point raised by appellants' counsel is, that the charge was obnoxious to art. IV., section 26, of the Constitution in various particulars, and especially in what his honor said in reference to the testimony of the witness, Wilson ; and also that he charged, that he saw "no room for a verdict of manslaughter." We have held in several cases that a violation of the constitu- tional provision referred to above consists in the trial judge allowing his opinion as to a disputed fact, or the force and effect of testimony, reaching the jury, directly or indirectly, inten- tionally or inadvertently. *Acker* v. *Anderson,* 20 *S. C.,* 499 ; *Lynn* v. *Thomson,* 17 *Id.,* 129 ; *State* v. *White,* 15 *Id.,* 392 ; *Howard* v. *Wofford,* 16 *Id.,* 148. Whether this constitutional inhibition is a wise one or not, is not for us to say, nor have we ever stopped to consider that question. It is in the organic law of the State, and when invoked, we have no alternative but to consider it, and to enforce it, when the facts so demand. We have no idea that any Circuit Judge now on the bench has ever intentionally disregarded this inhibition, or wilfully set it aside. But we are not surprised that some times, in an impromptu charge, and in the warmth of an oral discussion of the various

questions involved, with a statement of the testimony introduced, applicable to those questions, that the limit should be transcended in some particulars. On the contrary, the surprise is that it is not more frequently, and yet unconsciously, done.

We think in this case that the jury could hardly have failed to reach the conclusion that his honor believed that Wilson's testimony was truthful, that it was the most reliable, and should control. See *Thomp. Oharg. Jur.*, page 111, *et seq.* He said: "Mr. Wilson was the only witness to the whole transaction. He describes it very graphically, and it is for you to say whether his description is a truthful one, or not. His testimony has not been impeached directly. No witness has been put up there to attack his character, or to impeach his veracity. He has given you a plain, distinct, calm narrative of what he says occurred on the morning when this fatal rencounter took place. You are to take that testimony, and judge whether it convinces you that these prisoners, or either of them, committed the crime with which they are charged, to wit, murder." Again, after stating the law of self-defence, presenting the idea that, for this defence to avail, the prisoners should have acted under a reasonable belief of danger of great bodily harm, he said, "But in solving that question you will ask yourselves, how could it be that either of the prisoners could have had such a belief? The dead man was unarmed. He was sitting on a trunk taking off his wet clothes, and putting on dry clothes; when he was approached he rose in his place. He had on nothing at all but his shirt and drawers, and one leg of his breeches was on, and one leg was off. Was the deceased then in such a condition, or did he have such a weapon, as to raise a reasonable apprehension in the minds of the father and son, that the son was in danger of great bodily harm, or of losing his life?"

The constitutional limit as to the judge is: "He shall not charge in respect to matters of fact, but may state the testimony and declare the law." This is brief, concise, and expressive, and leaves the facts proved, including the credibility of witnesses and the force and effect of the testimony, entirely to the jury. We think his honor in the above portions of his charge transcended this rule. *State* v. *White*, 15 *S. C.*, 392.

We think also it was error for his honor, at the conclusion of his charge, after having gone over the whole case, defining the different degrees of homicide, to say as he did, "I do not see any room here for a verdict of manslaughter." We wish it distinctly understood, however, that in thus holding we do not intimate an opinion as to the character of the case before the court, as to the degree of guilt, or whether his honor's remark was well founded or not, as applicable to either one or both of the defendants. We desire to be understood, that we rule it was error in the fact that such a charge was made, thereby excluding the question of manslaughter from the consideration of the jury in this case.

It may be, that in some rare criminal cases, where there is a conspicuous absence of all testimony applicable to one or more of the degrees into which crime is divided by the law, that the judge would be warranted in stating such absence, and in holding that as to that special degree, or crime, there was no evidence. Such was the case of *The State* v. *Nance* (25 *S. C.*, 168), where the court said: "We cannot hold that the judge erred in charging that there was no testimony as to self-defence, or such as could raise a question of manslaughter." So, too, as was incidentally said in the case of *The State* v. *Summers* (19 *S. C.*, 94): "If there is no testimony, the judge undoubtedly has the right to say so." But it should be a very clear case, a very conspicuous absence of all testimony to warrant such remark, especially in a case where its effect is to preclude the jury from considering the question of manslaughter, upon which the prisoner may in fact be relying, and of confining them to the deeper crime of murder.

As we have already stated, we do not mean to say that in our opinion manslaughter was made out in this case as to either of the defendants, and therefore we have not followed the counsel in their argument on the subject of manslaughter, and the alleged testimony in the case bearing upon that question; but we only mean to say that the responsibility was upon the jury to determine the degree of guilt which attached to these parties, and to enable them to solve this vital question the whole case should have gone to them untrammelled by the opinion of the judge.

We do not think that the charge is obnoxious to the exception

on the subject of the conspiracy referred to. When what his honor said is read as a whole on that question, he seems to have sufficiently left it to the jury as a question of fact.

We think it was error for his honor to have stated, that witnesses are examined in the presence of the prisoner in order that the prisoner may stop and correct them upon a false statement. We do not know how this remark was understood by the jury; but if it was understood as expressed, and the prisoners failed to rise and correct the witnesses, it was well calculated to prejudice the prisoners' case, in the event of any false statement.

There are several other exceptions based principally upon detached and incidental expressions of his honor, taken from different portions of the charge, which, in view of the fact that the case must be remanded for a new trial on the grounds stated above, we hardly think it necessary to consider formally. They are, therefore, passed by.

· It is the judgment of this court, that the judgment of the Circuit Court be reversed, and the case be remanded for a new trial.